IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **UNITED STATES OF AMERICA** * | |
| v. * | **Case No. PWG-13-445** |
| **ANTHONY AKRAH MORRIS,** * | |
| **Defendant** * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Anthony Akrah Morris' Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Def.'s Mot., ECF No. 105. Mr. Morris is currently incarcerated at Federal Correctional Institution ("FCI") Bennettsville, serving a sentence of 505 months. J. 2, ECF No. 72. Mr. Morris now seeks a reduction of his sentence to time served, or in the alternative, a sentence not greater than 192 months. Def.'s Mot. 1, 21; Def.'s Reply 9, ECF No. 115. I have reviewed all the materials[1] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons discussed below, the specific relief requested by Mr. Morris' is DENIED. However, I will reduce Mr. Morris' sentence from 505 months to 234 months.

### BACKGROUND

On September 16, 2014, Mr. Morris was found guilty by a jury of one count of Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a) (Count One), two counts of Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a) (Counts Two and Four), and two counts of Using, Carrying, and Brandishing a Firearm

---

[1]   The motion is fully briefed. *See* ECF Nos. 105, 113, and 115.

During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Counts Three and Five). Jury Verdict 1-2, ECF No. 59. On January 12, 2015, Mr. Morris was sentenced to a term of 121 months on Counts One, Two, and Four, a term of 84 months on Count Three, and a term of 300 months on Count Five. The sentences for Counts One, Two, and Four ran concurrently, the sentences for Counts Three and Five "stacked"—running consecutively with each other and with Counts One, Two and Four—for a total sentence of 505 months (42 years). J. 2. Mr. Morris' expected release date is November 11, 2048. https://www.bop.gov/inmateloc/ (last visited July 12, 2022).

Mr. Morris now seeks a reduction of his sentence to time served, or in the alternative, a sentence not greater than 192 months. Def.'s Mot. 1; Def.'s Reply 9. In support, Mr. Morris submits five grounds for sentence reduction: (1) the dangers posed by the COVID-19 pandemic; (2) the severity of his 505-month sentence based on his "stacked" 18 U.S.C. § 924(c) convictions; (3) the disparity between his sentence and the sentence he would likely receive today; (4) the disparity between his sentence and the sentences of his co-conspirators; and (5) his positive adjustment during his incarceration. Def.'s Mot. 1. Mr. Morris also contends that the Presentence Investigation Report ("PSR") prepared prior to his sentencing incorrectly calculated his criminal history category and criminal history points. Def.'s Mot. 20. Mr. Morris asserts that his correct criminal history category is III, not IV, and his prior convictions should result in a total of five criminal history points, not seven. Def.'s Mot. 20. Accordingly, Mr. Morris' sentencing guidelines range for Counts One, Two, and Four should be 108-135 months not 121-151 months. Def.'s Mot. 20-21; Def.'s Mot. Ex. B 22, ECF No. 107-2; *see also* Def.'s Mot. Ex. O, ECF No. 107-14.

The Government opposes Mr. Morris' motion, arguing that a sentence reduction to time served would not serve to engender respect for the law, convey the seriousness of Mr. Morris'

crimes, or deter Mr. Morris or others similarly situated to him. Gov't Resp. 17, ECF No. 113. The Government concedes that Mr. Morris has exhausted administrative remedies and that Fourth Circuit case law authorizes the reduction of Mr. Morris' sentence. *Id.* at 1. The Government also concedes that the sentencing calculations in Mr. Morris' PSR are incorrect and agrees with Mr. Morris' new guidelines range calculations. Gov't Resp. 12; *see* Def.'s Mot. Ex. O 7; *see also* Def.'s Mot. Ex. B. Nevertheless, the Government argues that Mr. Morris' violent crimes require a significant sentence of imprisonment. Gov't Resp. 12.

## DISCUSSION

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. High,* 997 F.3d 181, 185 (4th Cir. 2021). However, there is an exception when modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). Here, Mr. Morris requests a modification of his sentence for "compassionate release" under the First Step Act, as amended.[2] The First Step Act permits a defendant to petition a federal court directly after exhausting all administrative rights whenever "extraordinary and compelling reasons" warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Under the statute, I must do the following: (1) determine whether the petitioner has fully exhausted all administrative remedies or 30 days have passed since the Bureau of Prisons ("BOP") received the request; (2) determine whether "extraordinary and compelling reasons" warrant a sentence reduction that is "consistent" with applicable policy statements issued by the Sentencing Commission; and (3)

---

[2] The "compassionate release" provision of the 1984 First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A)(i), permitted a court to alter a sentence only upon a motion by the Director of the BOP. In 2018 Congress amended the compassionate release mechanism when it enacted the First Step Act of 2018. *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended, the compassionate release provision allows the Court to act on a motion for compassionate release filed by a defendant.

3

consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

## I.  Administrative Exhaustion

A court may only consider a prisoner's motion for compassionate release if the prisoner has "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf" or if 30 days have passed since the warden of a defendant's facility received such a request. 18 U.S.C. § 3582(c)(1)(A). This condition is satisfied. On May 17, 2021, Mr. Morris submitted a request for compassionate release to the warden at United States Penitentiary, Lee. Def.'s Mot. Ex. A 1-2, ECF No. 107-1. More than 30 days have passed since Mr. Morris' request was submitted to the warden. *Id.* at 3; *see also* Gov't Resp. 2. The Government concedes that Mr. Morris has exhausted his administrative remedies and is entitled to petition the Court for relief. Gov't Resp. 2; *see also* Def.'s Mot. Ex. A 1-2.

## II.  Extraordinary and Compelling Reasons

Second, I must determine whether "extraordinary and compelling reasons" warrant a sentence reduction and that such a reduction is "consistent" with Sentencing Commission statements. 18 U.S.C. § 3582(c)(1)(A). The Fourth Circuit has found that there is no applicable policy statement that governs a defendant's motion for compassionate release. *High*, 997 F.3d at 186 (citing *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020)). Additionally, I join with the majority of courts in finding that 18 U.S.C. § 3582(c)(1)(A)(i), as amended, grants courts with independent discretion to decide whether there are "extraordinary and compelling reasons" to modify a sentence, and does not require that a court defer to the Sentencing Commission's policy statements regarding this question. *See United States v. Wise*, Criminal No. ELH-18-72, 2020 WL 2614816, at *7-9 (D. Md. May 22, 2020) (holding the same and collecting cases). As the Fourth

Circuit observed, district courts have discretion to independently assess whether circumstances meet the extraordinary and compelling threshold. *McCoy*, 981 F.3d at 281-82. More specifically, "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citing *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). However, while not binding, the Sentencing Commission's policy statements may provide useful guidance. *Id.* at 279 (citing *United States v. Bryant*, Crim. No. 95-202-CCB-3, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020), *aff'd sub nom*. *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020)).

The Sentencing Commission's policy statements in U.S.S.G. § 1B1.13 offer guidance here. Section 1B1.13 recites the language of 18 U.S.C. § 3582(c)(1)(A) before it was amended in 2018, including the statement that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G § 1B1.13(2). The commentary to the policy statement provides four examples of what constitutes "extraordinary and compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) a catch-all "other reasons." U.S.S.G. § 1B1.13 app. note 1(A)–(C); *see also McCoy*, 981 F.3d at 280-81.

Mr. Morris moves for compassionate release for a number of reasons, the first reason being the dangers posed by the COVID-19 pandemic. Def.'s Mot. 1, 8. Mr. Morris asserts that his medical condition of hypertension places him at a heightened risk of developing medical complications related to COVID-19. Def.'s Mot. 8-12. The Fourth Circuit has noted that "COVID-19 raises medical issues in the prison context that are particularly serious — it is highly communicable; it is aggravated by certain other medical conditions; and it can be lethal." *High*, 997 F.3d at 185. Thus, a petitioner can present an extraordinary and compelling reason related to

COVID-19. *Id.* The district courts have discretion to determine how to resolve such motions. *Id.* Judges in this Court have found that the standard of extraordinary and compelling reasons was met during the COVID-19 pandemic where defendants have serious medical problems that placed them at high risk for complications if they contracted COVID-19. *See, e.g.*, *United States v. Jennings*, Case No. 13-cr-46-PWG, 2020 WL 4748462, at *4 (D. Md. Aug. 17, 2020) (citing cases in this Court and other courts, and the application to multiple serious conditions); *but see United States v. Taylor*, No. 17-cr-0268-PWG, 2020 WL 6322620 (D. Md. Oct. 28, 2020), *appeal dismissed*, No. 20-7632, 2021 WL 1784092 (4th Cir. Jan. 13, 2021) (finding that hypertension and high BMI were not sufficient to warrant prisoner's release when the spread of coronavirus in his BOP facility was under control, and prisoner did not show that he would not receive appropriate treatment at his BOP facility, or a nearby medical facility if he were to contract the virus).

Additionally, the judges of this Court have dealt with increased rates of COVID-19 inoculation differently. *Compare United States v. Gregory*, No. CR SAG-13-0034, 2021 WL 1909605, at *5 (D. Md. May 12, 2021) (concluding that the petitioner's COVID-19 vaccination removed his pulmonary-related conditions from the category of risk constituting an "extraordinary and compelling reason"), *and United States v. Alexander*, No. CR RDB-16-364, 2021 WL 2661395, at *3 (D. Md. June 29, 2021) (taking into account falling COVID-19 infection figures and rising vaccinations when denying that petitioner had "extraordinary and compelling" reasons for release), *with United States v. Spriggs*, No. CR CCB-10-354, 2021 WL 1856667, at *3 (D. Md. May 10, 2021) (finding that petitioner's receipt of one vaccination shot did not greatly decrease the court's concern regarding his vulnerability to COVID-19 when he had underlying medical conditions and there are new variants of COVID-19). Therefore, this Court does take vaccination status into account when evaluating a motion for compassionate release.

Vaccines have proven to be effective at preventing some strains of COVID-19, but effectiveness is not guaranteed for all existing and future mutations of the virus, and because there are unknowns regarding the extent and duration of the vaccine's protection, there may still be concern for particular individuals' increased risk of severe illness, even if fully vaccinated. *See. Spriggs*, 2021 WL 1856667, at *2–3 (noting that "a vaccine does not negate that [the defendant's] underlying health conditions make him eligible"). Thus, it is impossible to predict the impact of the various COVID-19 vaccines on future strains of this virus, just as it is impossible to predict the impact of COVID-19 on Mr. Morris' specific medical issues. Certainly, the situation regarding COVID-19 is rapidly evolving, and new information about the virus and risk factors must be taken into account, as well as the changing conditions at prison facilities, for better or worse.

Here, the Government argues that Mr. Morris' medical records do not support his claim of hypertension. Gov't Resp. 10; *see also* Def.'s Mot. Ex. M 1-39, ECF No. 107-12. Mr. Morris' medical records show that on April 22, 2021, he had a blood pressure reading of 154/92, which is in the elevated range. Def.'s Mot. Ex. M 16; Def.'s Mot. 11 (citing CDC, *High Blood Pressure*, Sept. 27, 2021 https://www.cdc.gov/bloodpressure/facts.htm). However, Mr. Morris' subsequent blood pressure readings on April 28, 2021, May 3, 2021, and May 5, 2021, were 119/78, 118/74, and 118/68, respectively; all these readings fall within normal blood pressure range. Gov't Resp. 10. Even if Mr. Morris does suffer from hypertension, the Government contends that his medical records indicate that the condition is treatable without medication. Gov't Resp. 10; *see also* Def.'s Mot. Ex. M 10.

A defendant's health condition that puts him at high risk of severe illness from COVID-19 has been cited as a basis for granting compassionate release, and this Court has granted motions for compassionate release when defendants have preexisting conditions, including hypertension.

*See United States v. Benning*, No. 16-cr-0527-PWG, 2020 WL 7054823, at *2 (D. Md. Dec. 2, 2020). At the same time, as the Government emphasizes, it is not clear that Mr. Morris suffers from hypertension, and there are multiple cases denying compassionate release to defendants with hypertension. *See United States v. McKay*, No. 18-CR-305-PWG. 2020 WL 7398865 (D. Md. Dec. 17, 2020) (finding hypertension and borderline obesity in a 38-year-old defendant are not extraordinary and compelling reasons warranting compassionate release); *see also United States v. Wright*, No. TDC-17-388, 2020 WL 2571198 (D. Md. May 21, 2020) (denying compassionate release to defendant at the age of 66 with diabetes, hypertension, chronic kidney disease, asthma, and obesity). Moreover, the current status of FCI Bennettsville indicates that the spread of COVID-19 is sufficiently under control. https://www.bop.gov/coronavirus/ (last visited July 12, 2022). FCI Bennettsville currently has only 1 inmate who has tested positive for COVID-19 and has reported only 1 inmate death from COVID-19 as of June 21, 2022. *Id.* Additionally, Mr. Morris has been vaccinated against COVID-19. Gov't Resp. 6 n. 2.

Because I am unpersuaded that Mr. Morris' hypertension demonstrates an extraordinary and compelling reason and because the spread of COVID-19 at FCI Bennettsville is controlled, there are presently no extraordinary and compelling health-related reasons that warrant compassionate release.

As to the other grounds on which Mr. Morris requests compassionate release, I find the length of Mr. Morris' sentence due to the "stacking" of his § 924(c) convictions, in conjunction with the PSR criminal history calculation error, present extraordinary and compelling reasons warranting a sentence modification. Mr. Morris was sentenced prior to the enactment of the First Step Act. *See* J. 2; *see also* Pub. L. No. 115-391, 132 Stat. 5194 (2018). Prior to the First Step Act, a conviction for § 924(c) was treated as "second or subsequent" conviction triggering a consecutive

8

25-year mandatory minimum even if the second § 924(c) conviction was obtained in the same case as the first. *McCoy*, 981 F.3d at 275; *see also Deal v. United States*, 508 U.S. 129, 132 (1993). When I sentenced Mr. Morris, I was therefore required to impose mandatory, consecutive sentences totaling 384 months for his two § 924(c) convictions: 84 months for the first conviction, and 300 months for the second. J. 2.

The First Step Act made a "[m]onumental…change" to sentencing calculations under 18 U.S.C. § 924(c), eliminating the "stacking" of § 924(c) convictions. *McCoy*, 981 F.3d at 275 (citing *Zullo*, 976 F.3d at 230).[3] Today, Mr. Morris' § 924(c) convictions would each have an 84-month mandatory sentence. If resentenced, with the revised criminal history category level of III making the sentencing guidelines range for Mr. Morris' § 1951(a) convictions 108-135 months, Mr. Morris' sentencing guidelines range would be 276-303 months. Def.'s Mot. 21; Def.'s Mot. Ex. O 6-7. As Mr. Morris has established extraordinary and compelling circumstances, I have the discretion to reduce his sentence to one supported by the § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A); *see also McCoy*, 981 F.3d at 286 (finding no error in the district court's "reliance on the length of the defendants' sentences, and the dramatic degree to which they exceed what Congress now deems appropriate, in finding 'extraordinary and compelling reasons' for potential sentence reductions."). A sentence of 234 months would be sufficient but not greater than necessary. *See* 18 U.S.C. § 3553(a); 18 U.S.C. § 3582(c)(1)A.

These concerns are further considered in the analysis of the sentencing factors.

---

[3] The First Step Act also increased the "[u]se and [t]ransparency of [c]ompassionate [r]elease" motions, allowing defendants to file for sentence modifications own their own behalf so long as they first applied to the BOP. McCoy, 981 F.3d at 276; *see also* § 603(b), 132 Stat. at 5239. This change is not relevant here as both parties agree Mr. Morris filed his motion after first applying for sentence reduction with the BOP.

**III.    Sentencing Factors**

A finding of "compelling and extraordinary reasons" is a necessary but, standing alone, not sufficient condition for compassionate release. This Court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense." 18 U.S.C. § 3553(a).

Here, the § 3553(a) factors support a sentence reduction because of Mr. Morris' relative youth at the time of the offense, his commendable efforts to rehabilitate himself while incarcerated, his incorrect PSR and revised sentencing guidelines range, and the extraordinary disparity between his sentence and the sentence of other similarly situated defendants (particularly his co-defendants), especially following the enactment of the First Step Act. There is no question that Mr. Morris' conduct was serious. Mr. Morris and his co-conspirators targeted locations frequented by the public to commit a series of armed robberies.[4] *See* Def.'s Mot. Ex. B 5-6; *see also* Def.'s Mot. 3; Gov't Resp. 11-12. During these robberies, his co-conspirators brandished firearms while approaching store employees. *See* Def.'s Mot. Ex. B 5-6; *see also* Def.'s Mot. 3; Gov't Resp. 11-12. Fortunately, no serious physical injury occurred to the victims of these robberies, but the fear they experienced cannot be overlooked. Moreover, Mr. Morris committed these offenses while on

---

[4]     Moreover, at sentencing, the Government called an FBI agent as a witness, through whom it introduced evidence of seven additional, uncharged robberies committed by the Defendant. Gov't Resp. 4. In several of these robberies, Mr. Morris brandished a firearm, and in two of the robberies, he pistol-whipped a victim. *Id.*.

probation for a previous felony conviction. Def.'s Mot. Ex. B 10-13. The circumstances surrounding Mr. Morris' offense combined with the uncharged additional robberies the Government introduced during sentencing emphasize the serious nature of his conduct, and clearly do not support a reduction of his sentence to time served, or alternatively to a total sentence of 192 months, as he has requested.

However, a review of Mr. Morris' individual circumstances supports a sentence modification. Mr. Morris was 22 when he was arrested and sentenced to 505 months in prison. Def.'s Mot. 2. The many exhibits attached to the briefing by counsel for Mr. Morris underscore his youth at the time of the offense, his positive adjustment while incarcerated, and the impressive steps he has taken to rehabilitate himself while incarcerated. *See id.* at 19. Since being incarcerated, Mr. Morris' has only had one disciplinary infraction. *See* Def.'s Mot. Ex. J 9, ECF No. 107-10; *see also* Def.'s Mot. 7. Mr. Morris has obtained employment and begun educational programming, taking courses in sign language and sound engineering. Def.'s Mot. Ex. J 12; Def.'s Mot. 7. These factors demonstrate a movement towards rehabilitation, supporting a sentence reduction.

The need to avoid disparities in sentencing also strongly supports reducing Mr. Morris' sentence. Mr. Morris contends that the disparity between his sentence and that of his co-defendants supports his argument for compassionate release. Def.'s Mot. 4. This disparity exists because Mr. Morris' co-defendants entered into plea agreements.[5] Def.'s Mot. Ex. E-H, ECF Nos. 107-5-8. But to grant Mr. Morris' compassionate release after serving roughly 117 months of his sentence would

---

[5] Mr. Jennings pled guilty to one count of Hobbs Act Conspiracy and one count of § 924(c) brandishing; he was sentenced to a term of 192 months imprisonment. Ms. Edmundson pled guilty to one count of Hobbs Act Conspiracy and one count of § 924(c) brandishing; she was sentenced to 78 months imprisonment. Mr. Smith pled guilty to one count of Hobbs Act Conspiracy and one count of § 924(c) brandishing; he was sentenced to 192 months of imprisonment. Def.'s Mot. Ex. E-H; *see also* Def.'s Mot. 4-5; Gov't Resp. 14.

afford him the benefits of a generous plea agreement when he refused the government's plea offer. A defendant who declines a plea offer, proceeds to trial and is convicted of more charges than his co-defendants (who did accept plea agreements to fewer charges) is not on equal footing with his co-defendants when comparing his sentence to theirs. However, Mr. Morris' failure to take a plea agreement does not warrant a disproportionately long sentence that is more than twice that of his co-conspirators. Not only does a disparity exist between Mr. Morris' sentence and that of his co-defendants, but there is likely also a disparity between Mr. Morris' sentence and similarly situated defendants who are sentenced today due to the First Step Act's elimination of "stacked" § 924(c) convictions. Thus, while this § 3553(a) factor does not support immediate release, it does support a sentence reduction to more closely align Mr. Morris' sentence with the sentences of his co-defendants and the sentences of similarly situated defendants sentenced after the First Step Act. *See id.* I find that the continued imposition of Mr. Morris' original sentence is greater than necessary to accomplish the goal of sentencing and that a sentence reduction is appropriate. *See* 18 U.S.C. § 3553(a). Considering all of the circumstances, I find that granting release at this time would be inconsistent with the sentencing factors set forth in § 3553(a). However, modification of the current sentence to a total sentence of 234 months would be consistent with the § 3553(a) factors. It reduces the enormous disparity between the sentence Mr. Morris originally received and the much lighter sentences received by his co-defendants (who participated in the same robbery spree he did) while at the same time accounting for the need for a greater sentence than his co-defendants received because they entered into plea agreements, and he declined to do so. Additionally, it takes into account the seriousness of the offenses for which Mr. Morris was convicted, as well as his prior criminal conduct, including the seven uncharged robberies introduced by the Government at sentencing. I arrive at a total sentence of 234 months as follows:

For Counts One, Two, and Four, 108 months each, running concurrently. For Count Three, 84 months consecutive to Counts One, Two, and Four (totaling 192 months). For Count Five, 84 months, 42 months of which will run consecutively to Counts One, Two, Three, and Four, and 42 months of which will run concurrently to Count Three, for a total of 234 months. *See* 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Braxton*, No. JKB-09-478, 2020 WL 4748536, at *5 (D. Md. Aug. 11, 2020) (explaining that the language of § 3582(c)(1)(A) "does not constrain the Court to decide between immediate release or no reduction at all, and instead leaves the Court discretion in its evaluation of the appropriate sentence once it finds 'extraordinary and compelling reasons.'"); *United States v. Jordan*, No. CR RDB-11-094, 2022 WL 214044, at *1 (D. Md. Jan. 25, 2022) (finding that although the circumstances of the case did not warrant it, courts have "authority in granting a motion for compassionate release to sentence a defendant below the mandatory minimum[.]"); *McCoy*, 981 F.3d at 288 (explaining that the First Step Act gives "new discretion to courts to consider leniency.").

## CONCLUSION

The Court recognizes the excessiveness of Mr. Morris' 505-month sentence based on "stacked" 18 U.S.C. § 924(c) convictions and an improperly calculated PSR. An individualized assessment of the § 3553(a) factors supports a reduction of Mr. Morris' sentence. Mr. Morris' motion for immediate release, or a reduction to a total sentence of 192 months is denied, but I will reduce his total sentence to 234 months.

## ORDER

For the reasons stated in this Memorandum Opinion and Order, it is this 25th day of July 2022, hereby ORDERED that Defendant's Motion for Compassionate Release, ECF No. 105, is DENIED. Mr. Morris' sentence will be reduced from 505 months to 234 months.

                                                          /S/
                                       Paul W. Grimm
                                       United States District Judge